IN THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF MARYLAND

ONEBEACON INSURANCE COMPANY, et al.

      Plaintiffs

v.                        Case No.: 05-1530

METRO READY MIX, INC.

      Defendant

\* \* \* \* \* \* \* \* \* \* \*

## AFFIDAVIT OF SACHINDER N. GUPTA

I, Sachinder N. Gupta, do hereby state that:

1. I am over the age of eighteen (18), am competent to testify in this proceeding and have personal knowledge of the facts set forth herein.

2. I am President of the defendant corporation, METRO READY MIX, INC. ("Metro"), and have personal knowledge of the facts set forth herein.

3. Metro is in the business of concrete manufacturing and supply, mainly for commercial construction. Metro purchases the component elements for its concrete, including sand, stone and cement, and then at its various plants, Metro mixes the sand, stone and cement with water to manufacture concrete. One of the products Metro manufactures is Auger Pile Grout, a type of concrete manufactured with sand, cement and water (with no stone added to the mix). The Auger Pile Grout is utilized by our customers to construct foundation piles for commercial structures. Our customers typically drill holes for the piles, place steel rebar into the holes, and then pour Metro's grout into the formed holes to construct foundation piles, upon which our customers and others construct columns and structural building elements.

4. On April 24, 2003, Metro entered into an open-ended exclusive supply contract with Berkel & Company Contractors, Inc. ("Berkel") for supply of concrete for Berkel's various construction projects. The same day, Berkel issued a purchase order to Metro for 1600 cubic yards of Auger Pile Grout ("grout") for Berkel's contract for work on a project known as Pier 5 Parking Garage in Baltimore City, Maryland ("the Project" or "the Pier 5 Project"). Pursuant to its contract for the Project, Berkel was to construct piles by drilling holes into the earth 14 inches in diameter and 60 to 70 feet deep, placing steel rebar in the holes, and filling holes with grout manufactured by Metro. Other contractors would then construct concrete pile caps and columns upon the piles.

5. After receipt of the purchase order from Berkel, Metro proceeded to manufacture the grout at Metro's newly constructed Brooklyn, Maryland batch plant. What Metro did not know at the time of its manufacture of the grout, but later learned, was that its newly hired plant operator inadvertently mixed the wrong ratio of water to cement (utilizing excessive water in the mix); as a result, the grout manufactured by Metro was defective.

6. Not knowing of the problem with its product, Metro delivered the grout to Berkel at the Project site, and Berkel poured the grout. Concrete is generally checked for strength by the owner's or general contractor's engineer, who performs break tests (where the concrete is broken to determine its load capacity) at a pre-determined "day" after the pour (in this case, 7 days, 21 days and 56 days). Upon delivery of the grout to the Project, there was no indication that the grout supplied was defective. In fact, upon testing of the

grout 7 days after the pour, the tests were in an acceptable range. Thereafter, other contractors on the Project constructed pier caps and columns on the piles constructed by Berkel.

7. In August, 2003, Berkel informed Metro that subsequent strength tests showed that the grout strength was 3000 psi, when it should have been 5000 psi. Metro then investigated and found that its plant operator had mis-manufactured the grout. Berkel informed Metro that as a result of the low strength grout, the general contractor on the Project, Chesapeake Contracting Company ("Chesapeake"), would be required to stop construction on the Project, demolish the pile caps and columns which had been constructed upon the piles (losing the use of this property), reconstruct the pile caps and columns, and install additional pilings constructed of the proper grout strength.

8. On August 18, 2003 (a few days after I learned of the problem), I sent a letter to Lanny Mackall, of HRH Insurance, who was agent for OneBeacon, the plaintiff in this case. In that letter, **Exhibit 2**, I informed OneBeacon's agent of the problem with our product and stated, "this letter is intended to inform you that a claim under our 'product liability' insurance may be filed by us. The claim could be about Two Hundred Thousand Dollars ($200,000)." Our only product liability insurance at that time was the CGL Policy at issue in this case.

9. I fully expected that OneBeacon would provide coverage to Metro for this loss, as the predecessor in interest to OneBeacon Insurance Company (Montgomery Insurance Company, see **Exhibit 3**), had provided Metro coverage under a virtually identical claim under our previous year's CGL insurance policy.

In that case, Metro had provided defective concrete for a project, and that concrete was utilized by Metro's client to fabricate building columns. As a result of the defective concrete, Metro's client was forced to demolish the building columns and reconstruct those components. Attached hereto as **Exhibit 4** is a memorandum from Civalyn Jackson of OneBeacon's predecessor, accepting coverage and stating, "this is to advise that our coverage Counsel has reviewed the policy language and...[i]t was decided that because the defective columns encased the 'work and product' of others, <u>there is in fact resulting property damage</u>. And, thus this would be a covered claim. The only damages not covered would be the cost of supplying new cement...." (Emphasis added). This previous year's policy was the same as the policy at issue in the instant case. Based on OneBeacon's predecessor's decision as to that claim, Metro believed that the Policy covered losses such as the one at issue in this case. Accordingly, in reliance upon OneBeacon's predecessor's actions in granting coverage on that claim, Metro renewed the Policy and did not purchase any additional endorsements or other insurance to cover losses for damages arising from Metro's defective products (such as those at issue in this case).

10. As a result of Metro's supply of defective grout on the Pier 5 Project, Berkel refused to pay Metro Two Hundred Forty One Thousand Two Hundred Fifty Four Dollars ($241,254.00) owed to Metro for various projects, including the Pier 5 Project. Accordingly, on or about May 6, 2004, Metro filed suit in the Circuit Court for Anne Arundel County Maryland against Berkel for the amounts owed for concrete and grout supplied on various projects. In that

4

action, Berkel filed its Counterclaim, asserting that Metro was liable to Berkel as a result of the defective grout the Pier 5 Project. Metro notified OneBeacon of this counterclaim, but OneBeacon refused provide Metro coverage for this claim. Instead, OneBeacon filed the instant Declaratory Judgment action.

11. As Metro had no defense as to Berkel's counterclaim (the grout supplied by Metro was in fact defective), and as OneBeacon refused to indemnify Metro for Metro's liability to Berkel, Metro had no choice but to enter into a Settlement Agreement with Berkel. In the Settlement Agreement, attached hereto as **Exhibit 5**, Metro agreed that it would release its claim for Two Hundred Forty One Thousand Two Hundred Fifty Four Dollars ($241,254.00) against Berkel (for sums due and owing for products supplied by Metro) if Berkel would release its claim for Two Hundred Eighty Five Thousand Forty Dollars and Twenty Five Cents ($285,040.25) against Metro arising from the supply of defective grout. The net result of the Settlement Agreement was that Metro liquidated its liability to Berkel in the amount of Two Hundred Forty One Thousand Two Hundred Fifty Four Dollars ($241,254.00). I DO SOLEMNLY affirm under the penalties of perjury that the matters and facts set forth in the forgoing affidavit are true.

December 30, 2005
Date

Sachinder N. Gupta, President of METRO READY MIX, INC.
Affiant

STATE OF MARYLAND
COUNTY OF CARROLL :ss

I HEREBY CERTIFY that on this 30th day of December, 2005,

before me, the subscriber, a Notary Public of the jurisdiction aforesaid, personally appeared Sachinder N. Gupta, known to me or satisfactorily proven to be the person whose name is subscribed to the within instrument and acknowledged that he executed the same for the purposes therein contained.

IN WITNESS WHEREOF, I hereunto set my hand and official seal.

**DONALD B. SEALING, II**
Notary Public - State of Maryland
Carroll County
My Commission Expires: 6-27-07

_____
Notary Public

My Commission Expires: 6-27-07

PLEAD\AFFION01.MET

6



EXHIBIT "2"

2120 Annapolis Road  Baltimore, MD 21230    (410) 539-2883  Fax: (410) 539-2891

August 18, 2003

Mr. Lanny Mackall
HRH Insurance
303 International Circle
Suite 400
Hunt Valley, Maryland 21030

Re:   Pier 5 Parking Garage
      Baltimore, Maryland

Dear Mr. Mackall:

We have just been informed by Berkel & Co. (our client) that there is a problem with the concrete supplied by METRO for the above project. Berkel & Co. claims that the strength of the concrete is about 3000 psi, whereas it should have been 5000 psi. The general contractor will implement the corrective measures immediately to avoid delaying the project, and thereby mitigating liquidated damages. This letter is intended to inform you that a claim under "product liability" insurance may be filed by us. The claim could be about $200,000.

We will keep you informed of the developments.

Very truly yours,

METRO READY MIX, INC.

Sachinder Gupta /dh

Sachinder N. Gupta, P.E.
President

dh:Docs/Metro HRH Berkel Pier5

FAXED
4:10 p.m.

**Montgomery Insurance**™
Member of Liberty Mutual Group

3555 Koger Blvd. - Suite 200
Duluth, GA 30096
Toll: 800-762-5573  Fax: 678-380-7595

### CERTIFIED MAIL - RETURN RECEIPT REQUESTED -

August 6, 2002

Metro Ready Mix, Inc.
c/o Global Accounting
6607 York Road, 2nd Floor
Baltimore, MD  21212

RECEIVED
AUG 1 6 2002
BY:

Attention: Hari Singla or Ed McGinty

| Re | : | Insured | : | Metro Ready Mix, Inc. |
|---|---|---|---|---|
|  |  | Claimant | : | Cleveland Cement Contractors |
|  |  | Project/Location | : | Lockwood Place - Baltimore, MD |
|  |  | Our File No. | : | OPM-00930y |

Dear Sirs:

Montgomery Insurance Company is the insurance administrator for Metro Ready Mix. This loss was reported to our office on 5/1/2002, and we have completed our investigation. While it is our common goal that no liability is found against Metro Ready Mix, the available information leads us to conclude that there is no coverage under our policy for this matter. This shall serve as a denial of coverage for the reasons stated herein.

### COVERAGE

Montgomery Insurance Company provides Commercial General Liability coverage to Metro Ready Mix, Inc. under policy number APR757975 on an "occurrence" basis for the period of November 30, 2001 to November 30, 2002, with liability limits of $1 million per occurrence.

### CLAIM

The information provided indicates that Metro Ready Mix was hired by Cleveland Cement Contractors, Inc. to mix and pour "cast-in-place" concrete columns for the Lockwood Place Parking Garage Project. The documents indicate that Metro Ready Mix followed the specifications as outlined by Cleveland Cement. However, when tested, 10 out of 11 columns failed to meet and pass strength and density testing. Allegedly, the formula for the cement mix was defective. As a result of the failures, the cement columns were demolished and rebuilt. Cleveland Cement, in turn, deducted the demolition and replacement costs from their contract with Metro Ready Mix. Metro Ready Mix is adamant that they followed all requirements and specifications in the contract, but did not receive the full, agreed upon payment for their work.



**Montgomery Insurance**™
Member of Liberty Mutual Group

3555 Koger Blvd. - Suite 200
Duluth, GA 30096
Toll: 800-762-5573  Fax: 678-380-7595

The loss you have submitted to us for consideration is not an insurance matter, but rather a contract dispute with Cleveland Cement. We wish to call your attention to the following policy provisions that limit or otherwise eliminate coverage under the subject policy:

A.  <u>Policy Insuring Agreement</u>

    SECTION I COVERAGES
    COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY

    1.    Insuring Agreement.

        a.    We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or **"property damage"** to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, **we will have no duty to defend** the insured against any "suit" seeking those damages for bodily injury or property damage **to which this insurance does not apply.** We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

            (1)    The amount we will pay for damages is limited as described in LIMITS OF INSURANCE (Section III); and

            (2)    Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverage A or B or medical expenses under Coverage C.

        b.    This insurance applies to "bodily injury" and "property damage" only if:

            (1) The "bodily injury" or **"property damage" is caused by an "occurrence"** that takes place in the "coverage territory"; and

            (2) The "bodily injury" or "property damage" occurs during the policy period.

"Property damage" as defined by the policy means:
    a.    Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

    b.    Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

OneBeacon Mutual Insurance Company    Peerless Insurance Company    2
The Netherlands Insurance Company    Excelsior Insurance Company
The Midwestern Indemnity Company


**Montgomery Insurance**™
Member of Liberty Mutual Group

3555 Koger Blvd. - Suite 200
Duluth, GA 30096
Toll: 800-762-5573  Fax: 678-380-7595

"**Occurrence**" as defined by the policy means: An **accident**, including continuous or repeated exposure to substantially the same general harmful conditions.

The above provisions mean that the policy is triggered when there is an "occurrence". But, the "occurrence" must result in "property damage" (or "bodily injury"). The reason we conclude there is no coverage is because the act of mixing and pouring the cement columns was not an accident. There has been no "occurrence".

Moreover, there was no physical injury to the columns or any other structures being supported by the columns. The columns were never actually put into use. Demolition of the columns was a business decision made by the general contractor. The mere existence of a defect does not constitute "property damage" when there has been no resulting damage. Your obligation to pay for, or correct a defect is not an obligation to pay damages because of "property damage". Accordingly, the insurance policy has not been triggered. Therefore, we deny coverage for this claim on the basis that there has been no "occurrence" and no resulting "property damage". We further deny coverage because the damages sought arise solely out of construction defects.

B.   Policy Exclusions

Besides the fact that this matter involves no definable accident or occurrence, the policy specifically bars coverage for property damage arising out of your work. If one misconstrues that because the cement columns did not meet quality standards, and this failure can somehow be classified as property damage, then we draw to your attention the following exclusions.

Please refer to **exclusions "j", "l", and "m"** under the Commercial General Liability Coverage Form - Section I (Exclusions), which state:

This insurance does not apply to:

   j. Damage to Property (Property damage):

      (5)   To that particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the property damage arises out of those operations; or

      (6)   To that particular part of any property that must be restored, repaired or replaced because your work was incorrectly performed on it.

      Paragraph (6) of this exclusion does not apply to property damage included in the "products-completed operations hazard."



**Montgomery Insurance**™
Member of Liberty Mutual Group

3555 Koger Blvd. - Suite 200
Duluth, GA 30096
Toll: 800-762-5573  Fax: 678-380-7595

l. Damage to "Your Work"

"Property damage" to "your work"' arising out of it or any part of it and included in the "products-completed operations hazard".

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

m. Damage to "Impaired Property" or Property Not Physically Injured

"Property damage" to "impaired property" or property that has not been physically injured, arising out of:

(1) A defect, **deficiency**, inadequacy or dangerous condition in "your product" or "your work"; or

(2) A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

"Your work" is defined as:

a. Work or operations performed by you or on your behalf; and
b. Materials, parts or equipment furnished in connection with such work or operations.

"Your work" includes:

a. Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work"; and

b. The providing of or failure to provide warnings or instructions.

"Impaired property" is defined as:

Tangible property, other than "your product" or "your work", that cannot be used or is less useful because:

a. It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or

**Montgomery Insurance**™
Member of Liberty Mutual Group

3555 Koger Blvd. - Suite 200
Duluth, GA 30096
Toll: 800-762-5573  Fax: 678-380-7595

  b. You have failed to fulfill the terms of a contract or agreement; if such property can be restored to use by:

    (1) The repair, replacement, adjustment or removal of "your product" or "your work"; or

    (2) Your fulfilling the terms of the contract or agreement.

Allegedly, the formula for the cement mixture was defective. The subject policy does not provide coverage against claims of inferior or defective work, nor defective products. The replacing and repairing of defective material or poor workmanship is a risk of doing business. We deny coverage for any alleged "property damage" which occurs to your work, or arises out of, "your work" performed by you. "Your work" includes any warranties or representations made at any time with respect to fitness, quality, durability, performance or use of "your work." Additionally, we deny coverage to the extent that any property is "impaired" as a result of a defect, deficiency, or inadequacy to "your work."

## CONCLUSION

This declination letter does not necessarily set forth all possible bases for the denial of coverage, and should not be construed as a waiver of Montgomery's rights to raise other bases for a denial of coverage not contained in this letter. We, on behalf of Montgomery, are willing to review any information or analysis you wish to provide respecting this indemnity position. When, and if, additional information is provided, Montgomery will review its coverage position and advise accordingly. Additionally, we reserve the right to amend or supplement our coverage position and to assert any policy defenses as additional information is discovered.

If you believe that Montgomery Insurance has erred in its handling of this claim, you may have this matter reviewed by the State of Maryland - Department of Insurance, Consumer Services Division.

Respectfully,

*Civalyn Jackson*
Civalyn Jackson
Claims Examiner

cc: Lanny Mackall, HRH

SERVICING CARRIER NOTICE: On November 1, 2001, Liberty Mutual Group entered into a business relationship with OneBeacon Corporation. As a result, Montgomery Insurance, a Liberty Regional Agency Market member company, assumed the responsibility of providing certain marketing, customer service and policy administration services to policyholders on behalf of OneBeacon and its member companies.

OneBeacon Mutual Insurance Company  Peerless Insurance Company  5
The Netherlands Insurance Company  Excelsior Insurance Company
The Midwestern Indemnity Company

**Mackall, Lanny**

| | |
|---|---|
| From: | Jackson, Civalyn [Civalyn.Jackson@montgomery-ins.com] |
| Sent: | Friday, November 22, 2002 10:30 AM |
| To: | Mackall, Lanny |
| Subject: | Suspected SPAM: Metro Ready Mix |

Mr Mackall,

This is to advise that our coverage counsel has reviewed the policy language and reconsidered our coverage position. It was decided that because the defective columns encased the "work and product" of others, there is in fact resultant property damage. And, thus this would be a covered claim. The only damages not covered would be the cost of supplying new cement. So far, the invoices appear in line and it is most likely that we will issue the full amount of $63,997 to the insured.

You may contact me with any questions.
Civalyn Jackson 800-762-5573 ext 7748