IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

ONEBEACON INSURANCE          :
and PENNSYLVANIA GENERAL     :
INSURANCE COMPANY,           :
    Plaintiffs               :
                     :
        v.               :     CIV. NO. AMD 05-1530
                     :
METRO READY-MIX, INC.,       :
    Defendant                :
                  ...o0o...

MEMORANDUM OPINION

Metro Ready-Mix, Inc. ("Metro"), a concrete manufacturer and the named insured on a commercial general liability insurance policy ("the Policy") issued by OneBeacon Insurance Company and Pennsylvania General Insurance Company (together, the insurers or plaintiffs), provided defective grout to Berkel & Co. Contractors, Inc. (Berkel), for use on a construction project in Baltimore. Consequently, Berkel was required to demolish and reconstruct pilings that had been constructed employing the grout. Subsequently, when Metro filed suit against Berkel for unpaid invoices in respect to several projects, Berkel filed a counterclaim alleging breach of contract and breach of express warranty in connection with the defective grout as to the one project. The insurers provided a defense to Metro in the Metro/Berkel litigation under a "reservation of rights."

In due course, Metro and Berkel settled their dispute, i.e., each agreed simply to dismiss their respective claims and they exchanged general releases. In the meantime, the insurers filed this declaratory judgment action (here based on diversity of citizenship) to

determine whether they were obligated to defend and/or indemnify Metro in connection with the Berkel counterclaim. Now pending is plaintiffs' motion for summary judgment. For the reasons stated within, I shall declare that the insurers need not indemnify Metro.

I.

The material facts are undisputed. For some time, Metro and Berkel had an existing vendor/vendee relationship in respect to Metro's concrete products used in the construction industry. On or about May 6, 2004, Metro filed a complaint against Berkel in the Circuit Court for Anne Arundel County for various unpaid invoices in the total amount of $241, 254 for concrete products supplied by Metro to Berkel for use on several construction projects in the Baltimore metropolitan area. On or about August 26, 2004, Berkel filed a counterclaim against Metro alleging that the grout supplied to Berkel by Metro and used by the former to construct pilings for the "Pier 5 parking garage" project had a strength that was significantly lower than that specified in the contract documents, thereby requiring the demolition and reconstruction of the completed pilings and otherwise causing additional costs in the total amount of $285,040.25. Specifically, Berkel alleged that the following remedial steps had to be undertaken:

- Stop construction on the project in order to perform additional testing and engineering to account for the low strength grout

- Demolish certain portions of new construction resting on low strength pilings

- Install additional pilings constructed of the proper strength grout

- Reconstruct those sections that were previously demolished

- Hire and compensate consulting engineers to account for the low strength pilings in the design and construction of the project

The insurers asserted in their original complaint in this case that they had no obligation to defend or indemnify Metro for any damages claimed in the Berkel counterclaim because the damages sought by Berkel consisted solely of costs that Berkel allegedly incurred as the direct result of the deficient grout supplied by Metro, including the replacement of the grout but, more costly still, the reconstruction of pilings in connection with which Metro's defective product had been used. Subsequently, the insurers learned that Metro had entered into a Settlement Agreement and General Release with Berkel, whereby Metro agreed to issue a "credit memorandum in the full amount of all of Metro's invoices to Berkel that [were] unpaid as of the date of [the] settlement" and the parties dismissed all claims with prejudice. Metro readily admitted in the Settlement Agreement (and has admitted here) that it provided non-conforming materials in connection with the Pier 5 construction project and thereby breached its contract with Berkel.

## II.

In my judgment, the issue of whether the insurers had a duty to defend Metro in respect to the counterclaim filed by Berkel is moot because they provided a defense under a "reservation of rights." The underlying case has now settled and therefore I need not declare the rights of the insured and the insurer as to the duty to defend. *Cf. Nationwide Mut. Ins. Co. v. Burke*, 897 F.2d 734 (4th Cir. 1990).

III.

Turning to the issue of indemnity, it is clear that there is no coverage. The Policy's provisions are triggered when there is "property damage" caused by an "occurrence" and policy exclusions are not applicable. Policy, Section I.1, 2. An "occurrence" is defined as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." Policy, Section V.13. The Policy does not define "accident." "Property damage" is defined, in pertinent part, "as physical injury to tangible property, including all resulting loss of use of that property" and "loss of use of tangible property that is not physically injured." Policy, Section V.17.

Plaintiffs assert that Metro's supply of defective grout to Berkel constituted merely a breach of its contractual obligation rather than an "accident" constituting an "occurrence." They cite, *inter alia*, *Mutual Benefit Group v. Wise M. Bolt Co., Inc.*, 227 F. Supp. 2d 459 (D. Md. 2002), in which Judge Harvey explained:

> In the context of cases dealing with construction damages, the critical inquiry in determining whether alleged damages were "expected" by the insured [and thus did not arise out of an "accident" constituting an "occurrence" under a liability policy] is whether the damages relate to the satisfaction of the insured's contractual obligations to construct its product or whether the damages relate to something other than the insured's product. In *Lerner Corp. v. Assurance Co. of America,* 120 Md.App. 525, 536-37, 707 A.2d 906 (1998), the Court explained this distinction:
>
> > If the damages suffered relate to the satisfaction of the contractual bargain, it follows that they are not unforeseen. In other words, and in the context of this case, it should not be unexpected and unforeseen that, if the Building delivered does not meet the contract requirements of the sale, the purchaser

-4-

> will be entitled to correction of the defect. This, we believe,
> would be the expectation and understanding of the reasonably
> prudent lay purchaser of a CGL policy. On the other hand, if the
> defect causes unrelated and unexpected personal injury or
> property damage to something other than the defective object
> itself, the resulting damages, subject to the terms of the
> applicable policy, may be covered.

*Id*. at 475-76. Plaintiffs claim that since Metro failed to meet its contractual obligations (in failing to provide conforming grout), it was "expected and foreseen" that Berkel would request and be entitled to corrective action (and/or reimbursement for the costs of same) for the defect and that therefore, there was no "occurrence." Further, they point out, there was no "occurrence" because the allegations in Berkel's counterclaim against Metro sounded in breach of contract.

Moreover, the insurers assert, Berkel's demolition of the pilings and columns necessitated by the defective grout was not "property damage" but was merely the cost incurred in replacing and repairing Metro's defective product and/or work. In other words, in order to replace the defective grout, the pile caps and columns that were constructed upon the grout had to be demolished and reconstructed in order to replace the defective grout. Consequently, plaintiffs claim that there was no "property damage" to a third party and thus no coverage under the Policy.

In this regard, the insurers cite *Woodfin Equities v. Harford Mut. Ins. Co.*, 110 Md. App. 616, 678 A.2d 116 (1996), *overruled on other grounds*, 334 Md. 399, 687 A.2d 652 (1997). In *Woodfin*, the insured had been hired to install a heating, ventilation, and air

conditioning (HVAC) system for a hotel.(Although Metro suggests that *Woodfin* is not good authority, in *Lerner Corp. v. Assurance Co. of Am.*, 120 Md. App. 525, 707 A.2d 906 (1998), the Court of Special Appeals stated: "[W]e do not believe that the Court of Appeals necessarily rejected our coverage analysis in *Woodfin* and still find . . . *Woodfin* instructive on the interpretation of CGL policies generally." *Id.* at 533-34, 707 A.2d at 910.) To repair the defective HVAC system, carpeting was pulled up and was drywall broken through to access the system. *Id.* at 649, 678 A.2d 131-32. The insurer denied coverage for the demolition work. In sustaining the position of the insurer, the Maryland Court of Special Appeals reasoned that "voluntarily pulling up carpeting or breaking through drywall to access the HVAC units [was] not property damage" but rather the "cost incurred in replacing and repairing the HVAC units." *Id.* at 649, 678 A.2d at 132 n. 8. The plaintiffs contend that, likewise in the instant case, under the *Woodfin* analysis, the demolition and reconstruction of the pile caps and columns should be considered the "costs incurred" for removing and replacing the defective grout rather than "property damage" within the meaning of the Policy.

For its part, Metro contends that its negligent preparation of the grout was "accidental" and "unforeseen" therefore an "occurrence," and that the demolition of the pile caps and columns constituted "property damage" under the Policy. Furthermore, Metro insists that the meaning of "property damage" in the Policy encompasses the demolition and reconstruction of the pile caps and columns and the general contractor's "loss of use" of the

pile caps and columns. Only the grout was Metro's "product."

I agree with the insurers that the damages sought by Berkel in its counterclaim against Metro were plainly "related to" the satisfaction of Berkel's contract (and significantly so) and that therefore no "occurrence" gives rise to Metro's potential liability. That is, in determining whether Berkel's "damages relate to the satisfaction of [Metro's] contractual obligations to construct its product or whether the damages relate to something other than the insured's product," *Mutual Benefit Group*, 227 F. Supp. 2d at 475, I conclude as a matter of law that because the grout's only purpose was to support the pile caps and columns, and indeed was an integral component of them in relation to the structure, the answer has to be that Berkel's damages "relate to the satisfaction of [Metro's] contractual obligations to construct its product." *Id*. Thus, there was no coverage under the Policy.

Metro's argument that its claim arises from an "occurrence" because, as a result of an "accident" (i.e., the unintentional mismanufacture of the grout), it became liable to Berkel for damages for the physical injury to and loss of use of tangible property of others--the pile caps and columns that were constructed using the low strength grout, is too fanciful to withstand analysis. Metro's principal support is *Sheets v. Brethren Mut. Ins. Co.*, 342 Md. 634, 679 A.2d 540 (1996). In *Sheets*, the Maryland Court of Appeals held that "an act of negligence [there, a negligent misrepresentation as to the capacity and soundness of a residential septic system] constitutes an 'accident' under a liability insurance policy when the resulting damage [is] an event that takes place without [the insured's] foresight or

expectation." *Id.* at 652, 679 A.2d at 548. In other words, when a negligent act causes damage that is unforeseen or unexpected by the insured, the act is an "accident" under a general liability policy. *Id.* at 653, 679 A.2d at 549. The court clarified that "unforeseen or unexpected does not refer to what the insurer *should have* foreseen or expected because doing so would render insurance policies all but meaningless." *Id.* This reasoning does not aid Metro because, as a matter of law, Metro clearly foresaw that breaching its contract in causing the construction of a building (garage) on pilings supported by defective grout would require the demolition and reconstruction of the underlying pilings and columns, which were thereby rendered worthless in respect to their intended purpose.

To be sure, one may discern some tension between *Sheets*, on the one hand, and *Woodfin* and its progeny, including *Lerner Corp.,* on the other hand. Nevertheless, the Maryland Court of Special Appeals discussed and distinguished *Sheets* at length in *Lerner Corp.*, and the Fourth Circuit has approvingly discussed and relied on *Lerner Corp.* as an authoritative interpretation of *Sheets. See Lords Landing Village Condominium Council of Unit Owners v. Continental Ins. Co.*, 1999 WL 710342, *2 (4th Cir., Sept. 13, 1999) ("We believe that the proper interpretation of *Sheets* is revealed by the Maryland Court of Special Appeals' subsequent decision in *Lerner,* which interpreted *Sheets.* In *Lerner,* the court considered losses occasioned by faulty workmanship and concluded that such losses were not the result of an "accident" as used in the CGL policy."), *after remand in* 520 U.S. 893 (1997(per curiam)(vacating judgment and remanding for reconsideration in light of *Sheets*).

The fact is that contractors under a standard CGL policy do not get the benefit of *Sheets'* expansive definition of "accident" when erstwhile "property damage" results from "damages [that] relate to the satisfaction of the insured's contractual obligations to construct its product." *Mutual Benefit Group*, 227 F. Supp. 2d at 475.

IV.

For the reasons set forth, the insurers' motion for summary judgment shall be granted. A judgment order follows.


Filed: April 18, 2006                          _____/s/_____
                                               Andre M. Davis
                                               United States District Judge